IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INT'L PAINTERS AND ALLIED TRADES
INDUSTRY PENSION FUND, *et al.*,

    *Plaintiffs*,

v.

PASS PAINTING CO. INC., *et al.*,

    *Defendants*

Case No. 25-cv-0896-ABA

**MEMORANDUM OPINION**

    The International Union of Painters and Allied Trades Pension Fund, the Finishing Trades Institute, and Daniel Williams, as fiduciary, (collectively, the "IUPAT Funds") have sued Pass Painting Company, Inc. ("Pass Painting") and Roger Eugene Rex. The IUPAT Funds have filed a motion requesting immediate entry of judgment and payment of delinquent contributions, interests, liquidated damages, audit costs, and attorneys' fees and costs. ECF No. 1. They have also filed an "Updated Request to Enter Judgment Pursuant to Stipulation." ECF No. 19. For the following reasons, Plaintiffs' motion will be denied.

**I.**    **Background**

    Pass Painting is bound to the terms of a Collective Bargaining Agreement ("CBA") with one or more labor unions affiliated with the IUPAT Funds. ECF No. 19-1, Stipulation ¶ 1. At some point, a dispute arose regarding Pass Painting's contributions to the IUPAT Funds, which resulted in the IUPAT Funds and Defendants entering into a Stipulation for Entry of Judgment (the "Stipulation") on January 19, 2024, in the amount of $116,697.12. ECF No. 19 ¶ 7; ECF No. 19-1 at 1–11. The Stipulation provided

for a 24-month payment plan by which Pass Painting would pay IUPAT Funds the stipulated amount. *Id.* Rex personally guaranteed the amounts due in the Stipulation. ECF No. 19 ¶ 9; ECF No. 19-1, Stipulation ¶ 3. The Stipulation provides that it "is limited to the agreement between the parties with respect to the unpaid and delinquent contributions and related sums enumerated herein, owed by Defendants." ECF No. 19-1, Stipulation ¶ 20. As of November 6, 2025, Defendants owed between $2,072.04 and $2,524.68 under the Stipulation, including remaining principal and interest. ECF No. 31 at 3; ECF No. 32 at 3.

Pursuant to the terms of the Stipulation and CBA, the IUPAT Funds audited Pass Painting for the period of January 1, 2020 through September 30, 2023. ECF No. 19 ¶ 16. On April 26, 2024, Pass Painting was informed that the audit revealed that Pass Painting had failed to report and pay $75,834.27 in contributions during the audit period. ECF No. 18 ¶¶ 26–27; ECF No. 19-1 at 12–21. Through the audit, the IUPAT Funds contend that Pass Painting violated the CBA by using non-union subcontractors for some work that the CBA required be performed by union members. The IUPAT Funds contend that Article 30 of the CBA requires Pass Painting to pay subcontractor contributions that the Funds would have received if Pass Painting had used union labor for that work. ECF No. 26 at 8–9; ECF No. 31 at 4–12.

The parties dispute whether Article 30 imposes such a requirement. Article 30 reads as follows:

> Subcontracting
>
> SECTION 1. The Employer shall not contract out, subcontract, or outsource work to be done at the site of the construction, alteration, painting, or repair of a building or structure or other work unless the Employer or person

2

> who will perform such work is a party to a Collective Bargaining Agreement with this Union or another Union affiliated with the IUPAT.
>
> SECTION 2. In the event that the Employer shall contract out, subcontract, or outsource any bargaining unit work, whether or not job site or other work encompassed by Section 1 hereof, the Employer must notify the Union as to the identity of the contractor or subcontractor to which the work will be assigned within one (1) day(s) prior to finalizing any agreement with such contractor, subcontractor, or other person.
>
> SECTION 3. In the event of contracting, subcontracting, or outsourcing of any job site work encompassed by the provisions set forth in Section I hereof, if the Union has provided the Employer with written notice that a contractor is presently delinquent in making contributions to the Union or any fringe benefit fund to which contributions are required by this Agreement, and, after being provided such written notice, the Employer nonetheless enters into or continues a contract for the performance of any job site work that is covered by this Agreement with such delinquent contractor, the Employer shall be liable for any unpaid fringe benefit contributions owed by such contractor because of the performance of such job site (or other) work pursuant to that contract.

ECF No. 26 at 9; ECF No. 31 at 4.

As noted above, after Pass Painting fell behind on other obligations (*i.e.* payments due separate from the alleged fringe benefit contributions for subcontracted work), the parties negotiated a payment schedule, which is reflected in the Stipulation. ECF No. 19-1, Stipulation ¶ 6(a)–(b). In addition, the Stipulation required that Pass Painting undergo the audit that has given rise to the present dispute. *Id.* ¶ 6(d). The Stipulation anticipated that there might be disputes about "audit findings." *Id.* ¶ 6(d)(ii). So, it incorporated a dispute mechanism. Under the Stipulation, "[i]n the event that

3

Defendant(s) dispute the audit findings, Defendant(s) must provide a detailed dispute in writing, with all supporting documentation, within ten (10) days of the date of receipt of the audit report." *Id.* And if Pass Painting's "dispute is denied and revisions are not made, payment in full will immediately be due." *Id.*

As noted above, the April 2024 audit contended that Pass Painting had failed to report and pay $75,834.27 in contributions during the audit period. The primary basis for that figure was $58,872.75 allegedly owed for failure to make contributions for use of non-union subcontractors performing covered work and the remaining amount alleged to be owed is allegedly due to a failure to make contributions for all employees performing covered work. *See* ECF No. 19-1 at 16–21.

After receiving the audit, Pass Painting submitted an audit dispute, which was denied on May 10, 2024. ECF No. 18 ¶¶ 27–28. In the May 10, 2024 letter, Pass Painting was reminded that, under the Stipulation, "[i]f Defendant(s) are unable to make payment in full of the amounts found due on audit, Defendant(s) may submit a request to add the amounts found due to this Stipulation," meaning to pay the additional amounts in installments. ECF No. 19 ¶ 18; ECF No. 19-1, Stipulation ¶ 6(d)(iii); ECF No. 19-1 at 22.

Although the parties agreed, in the Stipulation, that Pass Painting had a right to dispute the audit findings, they also agreed that if Pass Painting were to dispute such "audit findings" but the auditors were to reject such a dispute, the auditors' findings would be conclusive, and a failure by Pass Painting to pay those amounts would constitute "default." Specifically, the Stipulation states that "[f]ailure by Defendant(s) to submit either payment in full or a substantiated request to add the amounts due to this Judgment within ten (10) days of receipt shall constitute a default of the obligations

4

under this agreement" and if such "default is not cured as provided elsewhere in this Stipulation, all amounts found due as a result of the audit shall immediately become due and part of this Judgment." ECF No. 19-1, Stipulation ¶ 6(d)(iv).

On May 24, 2024, having rejected Pass Painting's audit dispute, the IUPAT Funds issued a default notice. ECF No. 18 ¶ 29; ECF No. 19-1 at 23–24. At the time of the default notice, Pass Painting had made 17 out of the 24 Stipulation balance payments. ECF No. 18 ¶ 29. The default notice stated that the remaining Stipulation balance payments were immediately due, along with the additional subcontractor payment amounts based on the audit, audit fees, liquidated damages, and attorneys' fees, totaling $96,306. ECF No. 19-1 at 23.

Under the terms of the Stipulation, if Pass Painting were to default under its terms and fail to cure the default within the time frame provided, the IUPAT Funds would immediately file a lawsuit against Pass Painting and Rex in the United States District Court for the District of Maryland. ECF No. 19-1, Stipulation at 1. On March 18, 2025, the IUPAT Funds filed the present case against Defendants and requested immediate entry of judgment and payment of delinquent contributions, interests, liquidated damages, audit costs, and attorneys' fees and costs. ECF No. 1.

The IUPAT Funds then filed a Motion for Entry of Judgment, requesting that the Court enter judgment against Defendants in the total amount of $184,251.86, constituting the remaining balance due under the Stipulation, the amount found due in the audit, liquidated damages and interest due under the stipulation and audit, and attorneys' fees as of May 30, 2025. ECF No. 19 ¶¶ 31–32. Defendants oppose the motion, arguing that there are material factual disputes regarding the amount that Pass Painting is alleged to owe. Pass Painting does not dispute that it owes the Stipulation balance

payments (though it asserts that it has now caught up on those monthly payments, *see* ECF No. 32 at 3). But it contends there is no basis under the CBA or the Stipulation to require Pass Painting to pay contributions for non-union workers employed by non-union subcontractors. ECF No. 24 at 3. The IUPAT Funds filed a reply brief. ECF No. 26.

The Court held a hearing on October 9, 2025 after which the Court ordered supplemental briefing, including "updated balances alleged to be remaining under the Stipulation (including any additional fees incurred and dates of any additional payments made by Defendants) as well as legal authority (including, but not limited to, articles of the Collective Bargaining Agreement) to support the claim that Defendants owe contributions for non-signatory subcontractors unassociated with the union." ECF No. 30 ¶ 1. The parties then filed supplemental briefs. ECF Nos. 31 & 32. In its supplemental brief, Defendants included Article 9 of the CBA, which states: "The Employer shall not contract out or subcontract or outsource any job-site work covered by this Agreement to any subcontractor or other person unless that subcontractor or other person is a party to a Collective Bargaining Agreement with this Union or another Union affiliated with the IUPAT." ECF No. 32-6 at 3.

## II.     Standard of Review

### A.     Is this a motion for default judgment, summary judgment, or something else?

The IUPAT Funds have requested entry of "judgment," but neither of their motions for entry of judgment (ECF Nos. 7 & 19) identify which of the Federal Rules of Civil Procedure authorize the requested relief. There has obviously not been a trial, and the Funds do not contend that the default judgment rule (Rule 55) applies. Where a party seeks entry of judgment prior to trial, ordinarily the dispute would be governed by

Rule 56, the summary judgment rule; Defendants here contend that is the framework that should apply to the present motion. *See* ECF No. 24 at 1. Plaintiffs, however, argue that their motion is not one for summary judgment but instead a Motion to Enter Judgment pursuant to Stipulation, similar to a motion to enforce a settlement agreement. ECF No. 26 at 4, 6; ECF No. 31 at 1. Accordingly, Plaintiffs argue that whether or not there are triable issues of fact is irrelevant to this motion. ECF No. 31 at 1. Plaintiffs point to a prior case in which another judge of this Court entered a judgment for Plaintiffs. *Int'l Painters & Allied Trades Ind. Pension Fund, et al. v. APC Specialist, LLC, et al.*, Case No. 23-cv-00931-RDB, ECF Nos. 14 & 16. However, unlike in this case, prior to the Judge Bennett's entry of judgment in *APC Specialist*, there was already a Notice of Default, as the defendants had not filed any opposition or response in the case. *APC Specialist, LLC, et al.*, Case No. 23-cv-00931-RDB, ECF No. 8. Thus, entry of judgment in that case was governed by Rule 55, the default judgment rule.

Here, Rule 55 does not apply, because although Defendants may be in "default" under the Stipulation, they are not in default in the litigation, having retained counsel who has entered appearances and is litigating the case. Defendants contest that Plaintiffs are entitled to judgment. Plaintiffs contend the plain language of the Stipulation entitles them to judgment, and they may ultimately be correct about that, but the Federal Rule of Civil Procedure most applicable to the present dispute is Rule 56, the summary judgment rule. Accordingly, the Court will consider Plaintiff's motion under summary judgment standards.

### B.     Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A moving party meets its burden when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and when the nonmovant bears "the burden of proof at trial." *Celotox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with "sufficient evidence . . . for a jury to return a verdict for that party," the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotox*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). In making this determination, the Court views all facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88.

Although Rule 56 permits a party to file a motion for summary judgment "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), ordinarily summary judgment is only appropriate after discovery. For example, summary judgment is premature when "the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues . . . are involved." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted); *see also Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 783, 787 (D.C. Cir. 1971) ("Summary judgment is only appropriate when there is no bona fide material issue, and Rule 56 clearly contemplates that the parties shall have opportunity for deposition in order to establish the existence of a material issue.").

But sometimes summary judgment is appropriate early in a case including where a moving party has shown that undisputed evidence entitles it to judgment as a matter of law on a claim or issue, and where the opposing party is unable to show that "more discovery is necessary" on the issue. *Brent v. City of Cumberland Police Dep't*, 700 F. Supp. 3d 314, 320 (D. Md. 2023).

### III.  Discussion

Generally, "[a]n employer may not defend against a suit by a pension fund by raising contractual defenses it may have against the union, such as that the collective bargaining agreement was the result of fraud in the inducement or mistake of fact." *Nat'l Elec. Benefit Fund v. James Copeland Elec. Constr., LLC*, Case No. 10-cv-3258-RWT, 2011 WL 2181490, at *3 (D. Md. June 2, 2011) (*citing Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997); *Trustees of ALA-Lithographic Pension v. Crestwood*, 127 F. Supp. 2d 475, 479 (S.D.N.Y. 2001)). "Nevertheless, multiemployer funds are not permitted to enforce a nonexistent contractual obligation." *Ralph's Grocery Co.*, 118 F.3d at 1022; *accord Nat'l Elec. Benefit Fund*, 2011 WL 2181490, at *3.

Pursuant to the terms of the Stipulation, following an audit, if Pass Painting is found to owe contributions to the IUPAT Funds and it fails to pay the amount due or come to an agreement with the IUPAT Funds to add it to the balance due in the Stipulation, then Pass Painting will be found in default. *See* ECF No. 19-1, Stipulation ¶ 6(d). These terms, however, are limited to unpaid and delinquent contributions *actually owed* by Pass Painting. *Id.* ¶ 20. It is clear that Defendants agreed that an audit would be conclusive about "audit findings." *See* ECF No. 19-1, Stipulation ¶¶ 6(d)(i)–(ii). In the context of the Stipulation, "audit findings" pertained to questions such as who worked

9

for Pass Painting, what days and hours they worked, and other facts from which Certified Public Accountants may be able to calculate contribution amounts owed. But the present dispute is not about "audit findings"; it is about the correct interpretation of the CBA, particularly Article 30. Defendants argue that they did not agree to delegate to an auditor *legal* questions such as the interpretation of the CBA, or whether certain categories of work were subject to the CBA. They argue they certainly did not agree that an auditor's determination of such legal questions would be conclusive or unreviewable. Accordingly, the question before the Court is whether there is a genuine dispute of material facts regarding whether Defendants *actually owed* contributions to the IUPAT Funds based on the language of the CBA such that Defendants' failure to pay those contributions following the audit would constitute a default under the Stipulation.

Having reviewed the present record, including the excerpts of the CBA the parties have filed, the Court concludes there are genuine disputes of material facts that impede the Court's ability to determine whether *as a matter of law* the IUPAT Funds are entitled to the audit funds and any associated liquidated damages, interest, and attorneys' fees and costs.

First, there is a dispute over Pass Painting's obligations under the CBA when it comes to subcontractors. The language of Article 30 clearly provides that Pass Painting would "be liable for any unpaid fringe benefit contributions *owed* by such contractor." ECF No. 31 at 4 (emphasis added). And Article 30 does prescribe particular steps Pass Painting is to take if it needs to engage subcontractors. But it is unclear from the current record whether Pass Painting was obligated to pay fringe benefit contributions if it hired non-union subcontractors, *i.e.* subcontractors that did not themselves "owe[]" fringe benefit contributions. That distinction renders inapplicable the various out-of-circuit

10

cases the IUPAT Funds argue are instructive. *See* ECF No. 31 at 6–11 (*citing Brogan vs. Swanson Painting Co.*, 682 F.2d 807 (9th Cir. 1982); *Tr. of Teamsters Constr. Workers Local No. 13, et al. v. Hawg N Action, Inc.*, 651 F.2d 1384 (10th Cir. 1981); *Chi. Painters & Decorators Pension v. Karr Bros., Inc.*, 755 F.2d 1285 (7th Cir. 1985); *Painters & Allied Trades, Drywall Tapers & Painters v. Bernie Wolff Constr. Corp.*, 1991 U.S. Dist. LEXIS 16315 (S.D.N.Y. 1991); *Mich. Glass & Glazing Indus. Defined Contribution Pension Plan v. CAM Glass, Inc.*, 2008 WL 506350 (E.D. Mich. 2008); *Tr. of Sheet Metal Workers' Local Union No. 80 Pension Tr. Fund v. MJ Mech. Servs.*, 2014 WL 5307605 (E.D. Mich. 2014); *Tr. of the Operating Eng'rs' Local 324 Pension Fund v. Tri-City Groundbreakers, Inc.*, 2023 WL 1868138 (E.D. Mich. 2023)). Moreover, although the parties focus on Article 30, it is unclear from the current record the impact, if any, of Article 9. That provision (ECF No. 32-6 at 3) addresses the circumstance where Pass Painting subcontracts with a company that is not a party to a CBA with the IUPAT Funds. ECF No. 30 ¶ 1. The IUPAT Funds do not argue that Pass Painting violated that provision, and, in any event, the present record does not establish what remedy, if any, would flow from that alleged breach. In short, at least on the present record, there are genuine disputes regarding the proper interpretation and application of the CBA with regard to Pass Painting's use of non-union subcontractors.

      Second, to the extent Pass owes such obligations, there are disputes about the proper categorization of the subcontracted work, which may bear on damages. Pass Painting argued both in its initial response brief and supplemental brief that if non-signatory subcontractors are treated as employees under the CBA, the audit report was incorrect in treating them as "journeymen" entitled to the maximum contributions to the IUPAT funds rather than as "utility" or probationary workers (due to the hours

11

worked). ECF No. 24 at 4; ECF No. 32 at 6–7. It may be that such determinations constitute "audit findings" (as opposed to legal conclusions) and thus that Pass Painting waived any right to dispute that, *if* fringe benefit contributions are owed for subcontracted work, the applicable rate is for "journeymen." But IUPAT Funds failed to address this argument, which leaves a genuine dispute regarding the amount of damages it may be entitled to.

Third, even if Pass Painting is on the hook for fringe benefit contributions from engaging non-union subcontractors, and regardless of the proper categorization of that work (journeyman vs. utility), there are dispute of fact related to whether the union waived any such obligation. Pass Painting contends the union was on notice of Pass Painting's need to engage non-union subcontractors—a need allegedly prompted by the union's own inability to supply union workers—and that the union did not object to the arrangement or contend that Pass Painting violated the CBA in doing so. ECF No. 24 at 3–4; ECF No. 32 at 10. This creates a genuine dispute as to whether any alleged breach has been waived.

Fourth, there is a genuine dispute regarding whether Pass Painting owes contributions to the IUPAT Funds for William Dolan and Rodney Roden. *See* ECF No. 24 at 5; ECF No. 26 at 10; ECF No. 32 at 5.

Finally, Pass Painting has raised in its supplemental brief that some portion of the contributions alleged to be owed may be barred by the statute of limitations. ECF No. 32 at 4–5. Because this was raised in the supplemental brief, the IUPAT Funds have not had an opportunity to respond to that argument, but it raises another barrier to the Court's ability at this stage to order damages for alleged claims that may be barred.

With these genuine disputes of material facts, the Court is unable to determine as a matter of law (1) whether Pass Painting actually defaulted under the Stipulation and (2) if it defaulted, the amount of damages the IUPAT Funds would be entitled to. The Court understands the IUPAT Funds' stance that the purpose of the Stipulation is to avoid having to re-litigate any additional amounts found to be due based on the agreement between the parties. And at least with respect to "audit findings," such findings may be determinative. But the dispute is broader than that, and a fund like Plaintiffs here is not permitted to enforce nonexistent contractual obligations. *See Ralph's Grocery Co.*, 118 F.3d at 1022. Without more, the Court finds summary judgment would be premature given the disputes enumerated above.

## IV.   CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Judgment, ECF No. 19, will be denied as premature. The parties will be instructed to file a joint status report regarding how they intend to proceed in this case. A separate order follows.

Date:  January 13, 2026

_____/s/_____
Adam B. Abelson
United States District Judge